**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 6:14-cr-00171 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| ARTHUR CRAIG WAGLEY | MAGISTRATE JUDGE HANNA |

**MEMORANDUM RULING**

On August 31, 2018, this Court revoked the probation of Defendant Arthur Wagley ("Wagley") for violating multiple conditions of his probation. [Record Document 89]. Wagley now files a motion for a new trial or, in the alternative, a motion for reconsideration. [Record Document 90]. For the reasons given below, the motion is **DENIED**.

**I.   Background**

Wagley was charged in an eleven-count indictment related to his telephone harassment of his estranged wife. [Record Document 1]. The Court originally placed Wagley on unsupervised pretrial release subject to standard conditions, including not using controlled substances. [Record Document 9 at 2]. He tested positive for marijuana at a drug test on October 27, 2014. [Record Document 19 at 1]. After an appearance before Magistrate Judge Hanna, Wagley was placed under supervision, but allowed to remain free on bond. [Record Document 26 at 2].[1] He then completed an outpatient drug treatment program. [Record

---

[1] At this hearing, Judge Hanna also stated "you may recall when you were originally brought here they had found marijuana on you." [Record Document 27 at 3]. It is unclear exactly what incident Judge Hanna is referring to, but he characterized this as an additional violation of the conditions of Wagley's pretrial release. [*Id.*]. The record contains no other

1

Document 39 at 1].

On July 23, 2015, Wagley pleaded guilty to one count of making harassing telephone calls in violation of 47 U.S.C. § 223(a)(1)(C). [Record Documents 35 and 37 at 2–3]. The Court lifted Wagley's travel restrictions, but maintained all other conditions of pretrial release supervision. [Record Document 39 at 1]. On August 20, 2015, Wagley tested positive for marijuana a second time. [*Id.*]. When confronted on September 10, 2015, he denied using marijuana and submitted a diluted sample for testing. [*Id.*]. He made an initial appearance on the revocation of his supervised release; at that time Judge Hanna ordered that all previous conditions of supervised release remain in effect. [Record Document 46 at 1].

At sentencing on December 8, 2015, the Court found that the Sentencing Guidelines suggested a sentence of two to eight months imprisonment, one year of supervised release, and a $5,000 fine. [Record Document 52 at 4]. Judge Haik sentenced Wagley to five years probation and a $20,000 fine. [Record Document 54 at 2, 4].[2]

Less than six months later, the Court issued a summons based on allegations that Wagley had failed to pay two monthly installments on his fine and had tested positive for marijuana for a third time. [Record Document 60 at 1–2]. After the summons on revocation was issued but before his initial appearance, Wagley paid the entire balance of the fine. [Record Document 84 at 14]. Although he admitted to using marijuana, [Record Document 65 at 1], he blamed his

---

information about this incident.

[2] According to the United States Probation Office, Wagley's ex-wife, whom he had admitted to harassing in the factual basis of his guilty plea, asked the Court for the probation sentence as it would impose a longer period of restraint on Wagley's behavior. [Record Document 92 at 58].

continued use on particularly stressful family situations and disrupted sleep caused by the curfew monitoring system, which required him to wake up several times during the night to answer automated calls checking that he was, in fact, at home, [Record Document 67 at 3–8, 15]. At the revocation hearing, Judge Doherty noted that Wagley personally selected that system in lieu of an ankle monitor that would not have disturbed his sleep. [Record Document 84 at 33]. Rather than set a final revocation hearing, Judge Doherty deferred adjudication for six months. [Record Document 65 at 1]. She made it clear that any violations of the conditions of his probation would result in his imprisonment. [Record Document 84 at 66–67]. A final revocation hearing was never held, leading the Court to now conclude that Wagley was compliant for those six months.

On March 29, 2018, Wagley again tested positive for marijuana for a fourth time. [Record Document 72 at 2]. After he agreed to participate in more outpatient treatment, Judge James concurred with the Probation Office's recommendation of no action. [Record Document 92 at 59]. On April 19, 2018, he tested positive yet again and admitted to his treatment counselor that he had been using marijuana for the past year and using substances to circumvent drug testing. [Record Document 72 at 2]. This timeline establishes that Wagley, by his own admission, resumed marijuana use soon after the end of the six-month period during which the Court had threatened prison for any further violations.[3] After Wagley agreed to enter inpatient treatment, Judge James again approved the Probation Office's recommendation of no adverse action. [Record Document 92 at 60].

---

[3] At the instant revocation hearing, Wagley testified that he had resumed marijuana use by January 2018. [Record Document 92 at 26–27].

Wagley completed inpatient treatment on June 11, 2018. [Record Document 72 at 2]. He missed a required outpatient group treatment session and, on June 25, 2018, tested positive for marijuana for a third time in as many months, bringing him to a total of six positive drug tests. [*Id.*]. On July 9, 2018, the Court issued a summons based on these most recent allegations. [*Id.* at 1]. Wagley was again released pending a final revocation hearing and ordered to abide by all conditions of his probation. [Record Document 81 at 1].

At the final revocation hearing, the Court heard testimony from Wagley and Dr. David Lejeune ("Lejuene"), a licensed addiction counselor. [Record Documents 87 and 92 at 31].[4] Wagley attempted to excuse his delinquent payments on his fine by explaining that he had initially anticipated receiving a loan to pay the fine, but when the loan was denied, he had to liquidate an asset at a loss in order to pay. [Record Document 92 at 10–14]. Lejeune testified that Wagley had not been engaged in a sufficiently "seamless" treatment program, thereby causing repeated relapses. [*Id.* at 34–38].

Wagley admitted to the alleged six violations of the conditions of his probation. [*Id.* at 5]. Based on this admission, the Court found that Wagley violated these conditions and determined that his highest-grade violation was grade C and that his original criminal history category was III. [Record Documents 86 at 1 and 92 at 7, 56]. For a defendant with that record, the Sentencing Guidelines recommend five to eleven months imprisonment. [Record Documents 86 at 1 and 92 at 63]. The Guidelines also authorize up to a year of supervised release. U.S.S.G. §§ 5D1.1(b), 5D1.2(a)(3), 7B1.3(g)(1). The Court sentenced Wagley to six

---

[4] Confusingly, Wagley's motion refers to this witness as Dr. David Legendre. [Record Document 90-3 at 4–5].

months imprisonment and one year of supervised release. [Record Document 89 at 3–4]. Although the Court typically does not order supervised released when revoking probation, the Court found in this case that the term of supervised release was necessary so as to more closely approximate the original five-year term of supervision to which Wagley was sentenced. [Record Document 92 at 64]. Otherwise, he would effectively be rewarded for his illegal conduct with a shorter term of supervision. [*Id.*].

II.     **Motion for a New Trial**

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although a district court has the discretion to grant a new trial, Rule 33 motions are disfavored and only granted with great caution. *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (citing *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir. 1977)). In addition, the grounds for a new trial are limited to those that the defendant raises. *United States v. Nguyen*, 507 F.3d 836, 839 (5th Cir. 2007). "The remedy of a new trial . . . is warranted only where there would be a miscarriage of justice . . . ." *O'Keefe*, 128 F.3d at 898 (internal quotation marks omitted) (quoting *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996)).

In support of his motion, Wagley argues that his attorney lacked adequate time to prepare for the hearing and that the Court misconstrued Lejeune's testimony. [Record Document 90-3 at 5–6]. Wagley's counsel represents that he was unable to adequately prepare due to commitments to other clients and to his role as an elected school board member. [*Id.* at 6–7]. Counsel first raised these concerns on August 14, 2018, two weeks before the scheduled hearing,

and did so informally in an aside to an email to the Court. Although the Court's law clerk replied that the Court "is currently disinclined to continue the hearing," this response in no way implies, as counsel suggests, that a motion to continue would have been "frivolous." [*Id.* at 6]. The Court's observation merely implied that the motion would require significant justification to warrant resetting a hearing which was to take place in two weeks and for which the Court was traveling. Counsel now lists a number of items that he represents were already calendared prior to his being notified on July 13, 2018 of the date and time of the revocation hearing. [*Id.*]. What the instant motion fails to explain is why, if counsel knew of these commitments at the time the Court set the revocation hearing, counsel then waited a month to even raise these scheduling issues.

It was only <u>after</u> the Court noted its preliminary position that counsel "decided to devote his attention to attempting to prepare for said hearing" and "[u]pon doing so, . . . determined that more information, interaction with treatment team members, and preparation would be necessary." [*Id.*]. Taking these words at face value, they suggest that Wagley and his attorney did not begin to prepare for the hearing until slightly more than two weeks before. Lejeune's testimony corroborates this reading. Lejeune testified that he first met with Wagley on August 26, 2018—five days before the hearing. [Record Document 92 at 42]. Wagley has never explained why he waited until the eve of his revocation hearing to begin developing a new treatment plan. The threat of revocation for marijuana use is not a new one for Wagley or for this attorney, who appeared on Wagley's behalf in the prior revocation proceeding before Judge Doherty. [Record Document 84 at 4]. Given these facts, it is unclear why counsel failed to

6

realize in a more timely fashion that a defense to revocation on the basis of drug use might require testimony from treatment team members and a fully elaborated alternative to incarceration.

Counsel suggests that he needed additional time to "present a comprehensive treatment plan, including inpatient rehab, follow up, accountability, monitoring, and alternatives to incarceration, through the use of counselors and expert witnesses." [Record Document 90-3 at 7]. Having had two additional weeks in which to prepare the instant motion, Wagley has produced only a single piece of additional evidence: a one-page report by Tootie Landry ("Landry"), the treatment counselor assigned by the Probation Office. [Record Document 90-1]. This minuscule additional production suggests that delaying the hearing would not have substantially altered the evidence presented. As this evidence relates to the treatment ordered by the Probation Office, it also fails to establish or even suggest the sort of "seamless" plan involving an enlarged treatment team that counsel now asserts he lacked time to prepare before the hearing.

At the hearing, Wagley and Lejeune both testified that despite following the treatment plans laid out by the Probation Office, Wagley had relapsed. [Record Document 92 at 15, 34–38]. Wagley expressed his opinion that he relapsed because

> there was a lack of continuum in the care in that I didn't have additional aftercare support, and when I went to the court-mandated outpatient, it was one hour a week as opposed to anything more intensive that involved me to be involved more often. . . . . I relied on them to tell me what I should do, and actually the one hour a week was court mandated through Mr. Melancon's office.

[*Id.* at 15]. The Court noted that this testimony at the very least implied that Wagley believed that

7

the Probation Office was at fault for not requiring additional treatment, despite the fact that it was in Wagley's power at any time to ask his probation officer for assistance in locating additional treatment or to seek additional treatment on his own. [*Id.* at 62]. Although Wagley maintains that he has "accepted responsibility for his conduct and has never blamed his probation officer," [Record Document 90-3 at 5], the Court cannot draw this conclusion from the evidence and testimony presented at the hearing. The Probation Office required Wagley to engage in a minimum amount of substance abuse treatment. No evidence suggests that the Probation Office ever forbade Wagley from seeking additional treatment nor does any evidence suggest that he ever even expressed to the Probation Office any desire for additional treatment.

Simply put, once Wagley relapsed he could have sought out a therapist like Lejeune who then could have worked with the Probation Office to design the "seamless" recovery plan that Wagley asserts that he needs.[5] Wagley did not do this. Rather, he used marijuana for over a year while on probation, used substances to conceal the marijuana use, and continued to test positive after engaging in treatment programs that he himself selected. The Court reaffirms its finding

---

[5] The Court notes that Judge Doherty made a nearly identical observation to Wagley in June 2016:

> You knew you were using. You knew you were using in violation. You had already been through one treatment program, if I'm not mistaken. You knew it. That's a choice. That's not a mistake. That's not an illness. That's a choice. Because, I'll tell you what, if it's an illness—drug addiction , in my opinion, is, quite frankly—when symptoms appear, again what do we do? We go to the doctor. You didn't. That's a choice.
> And it's not like you didn't have the financial capacity to do it, because you did do it, but you didn't do it until you got busted. And you knew you were smoking when you weren't supposed to be. That's a choice. That's attitude.

[Record Document 84 at 32].

that Wagley only seeks treatment when he either has been or is about to be caught. [Record Document 92 at 61]. His motion for a new trial is denied.

### III.  Motion for Reconsideration

On the basis of persuasive authority from other circuits, Wagley argues that the Court has authority to reconsider its judgment and that the standards from Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure should be employed. [Record Document 90-3 at 2–4]. The Fifth Circuit has not addressed this question, and the district courts within the circuit are divided. *Compare United States v. CITGO Petroleum Corp.*, 908 F. Supp. 2d 812, 820 (S.D. Tex. 2012) (holding that district courts can adopt civil standards for reconsideration in criminal cases) *with United States v. Griffin*, No. CR. A. 93-491, 2001 WL 540997, at *3 (E.D. La. May 21, 2001) (rejecting application of Rule 60(b) in the criminal context). The Court need not decide this question and will simply assume, for purposes of this motion, that the standards in Rules 59(e) and 60(b) are applicable to motions to reconsider decisions in criminal cases.

Rule 59(e) provides the criteria and procedures for altering or amending a judgment. Fed. R. Civ. P. 59(e). Because this remedy is extraordinary, it must be used sparingly. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citing *Clancy v. Emp'rs Health Ins. Co.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)). To that end, the grounds on which a motion for a new trial may be granted are limited to "correct[ing] manifest errors of law or fact or . . . present[ing] newly discovered evidence." *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Unlike Rule 59(e), Rule 60(b) specifically identifies the grounds on which relief from judgment may be granted, three of which are relevant here: "(1) mistake, inadvertence, surprise,

or excusable neglect; . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1)–(2), (6).

A. **Relief on Grounds of Newly Discovered Evidence**

Wagley argues that Landry's one-page Monthly Treatment Report constitutes newly discovered evidence warranting reconsideration under 59(e) or relief from judgment under Rule 60(b). [Record Document 90-3 at 2]. "A motion to reconsider based on an alleged discovery of new evidence should be granted only if (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 534 (5th Cir. 2015) (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 677 (5th Cir. 2010)). "To obtain Rule 60(b)(2) relief, a movant must demonstrate: '(1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment.' " *Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 418 (5th Cir. 2018) (internal quotation marks omitted) (quoting *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir. 2009)).

Given that Landry did not complete the report until September 6, 2018 when it was scheduled as part of her monthly billing cycle, [Record Document 90-1], the report was unavailable prior to the August 31, 2018 revocation hearing. As the report indicates that Wagley remained drug-free for the month of August, [*id.*], it does present new and non-cumulative facts.

10

Thus, the question before the Court is whether Landry's report would have "probably change[d] the outcome" of the hearing (for Rule 59(e) relief), *Ferraro*, 796 F.3d at 534 (quoting *Johnson*, 597 F.3d at 677), or "clearly would have produced a different result" (for Rule 60(b) relief), *Nat'l City Golf Fin.*, 899 F.3d at 418 (quoting *Thermacor Process*, 567 F.3d at 744). Since the Rule 59(e) standard is lower than the Rule 60(b) standard, evidence that fails to entitle Wagley to relief under Rule 59(e) necessarily precludes relief under Rule 60(b) as well.

The report shows that Wagley attended four group therapy sessions and passed three drug tests. [Record Document 90-1].[6] Although Wagley argues that this sober month proves that imprisonment is unnecessary, this evidence in fact demonstrates the opposite. If Wagley can remain drug-free without incarceration now that incarceration is a likely consequence of his admitted probation violations, he could have also—at any point during the prior three years—enrolled in and committed to a treatment program to obtain the results that he has now obtained. The fact that he is now drug-free also does not address the very concerning conduct to which he has admitted, in particular electing to use substances to evade detection of his marijuana use. That choice suggests a culpable mindset, an ability to plan to avoid consequences, and an unwillingness to recognize and respect this Court's authority.

At the hearing, the Court indicated that it did not believe that Wagley had committed to

---

[6] Wagley asserts that "Landry recommends continued treatment for . . . Wagley." [Record Document 90-3 at 2]. In her report, Landry did check a box that continued treatment was "recommended." [Record Document 90-1]. By pointing out this fact, Wagley seems to argue that Landry's recommendation is that Wagley's probation not be revoked so that he can continue being treated by her. However, nothing about the report suggest that Landry has any opinion on the appropriateness of a sentence that commits Wagley to the custody of the Bureau of Prisons.

treatment with Lejeune for any reason other than to avoid consequences for his behavior. [Record Document 92 at 61]. Lejeune appears to agree, testifying that "it's very apparent to me at this point that maybe the clang of that cell door has got his attention, and, you know, maybe now, with seamless treatment, we can get down the road where he needs to be." [*Id.* at 37]. The Court believes that marijuana may be addictive in some circumstances and acknowledges that Wagley may be addicted—though makes no findings on this point. But Lejeune testified that Wagley's personality traits may make recovery difficult and expressed some reservations about Wagley's willingness to engage in the hard work necessary to cease his substance use. [*Id.* at 41–42, 46]. In fact, Lejeune refused to state unequivocally that Wagley's conduct was entirely due to an addiction:

> COUNSEL: [A]re you comfortable with saying that addiction is the root of [Wagley's] problem and not just arrogance or a refusal to follow the rules?
>
> LEJEUNE: A  No.
>     Arrogance and refusal to follow the rules is only a symptom of that illness that we talked about earlier. There's also grandiosity. There's also a whole laundry list of character defects, but at the end of the day, you know, that disease goes to the bone, and I believe that at some point, you know, if this man is going to—if this man is going to do something with his life, he's going to have to get clean and sober.
>
> . . . .
>
> COUNSEL: So would you feel comfortable saying that it's more of an inability due to the addiction than a refusal in regards to that issue [i.e., using marijuana]?
>
> LEJEUNE: No.
>     Again, I'm not going to excuse his behavior.

[*Id.* at 41, 48]. Thus, the Court holds that its decision to revoke Wagley's probation is unlikely to have been different had the Court had access to Landry's report at the time of the hearing.

12

**B.     Excusable Neglect**

As Wagley presents no evidence of mistake, inadvertence, or surprise, the Court concludes that he is arguing that his failure to present at the hearing the arguments that he now raises constitutes "excusable neglect." Fed. R. Civ. P. 60(b)(1). As grounds, he offers that his counsel was unable to adequately prepare for the hearing. [Record Document 90-3 at 5–7].

The Supreme Court has indicated that "neglect" in the context of Rule 60(b) indicates a negligent failure to perform some required action. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993). Because litigants may be held responsible for the errors of their chosen counsel, the neglect of both Wagley <u>and</u> his attorney must be excusable. *See id.* at 397. Whether neglect is excusable is evaluated in light of the totality of the circumstances. *Id.* A series of factors are used to evaluate whether neglect was excusable: "(1) 'the danger of prejudice to the [non-movant],' (2) 'the length of the delay and its potential impact on judicial proceedings,' and (3) 'the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.' *Johnson v. Potter*, 364 F. App'x 159, 164 (5th Cir. 2010) (per curiam) (quoting *Pioneer*, 507 U.S. at 395). A strong showing on the third factor may relieve a court from the need to explicitly evaluate the remaining factors. *See id.* "A busy practice does not constitute excusable neglect." *Draper v. KK Ford, LP*, 196 F. App'x 264, 265 (5th Cir. 2006) (citing *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990)).

As discussed above, the failure to have a defense fully prepared in time for the August 31, 2018 hearing appears to be at least partially due to counsel's failure to promptly begin his investigation. The instant motion also fails to mention that Wagley had two attorneys enrolled

13

to represent him, both of whom appeared and addressed the Court at the hearing. No mention is made in the motion of any conflicts preventing the second attorney from preparing Wagley's defense. Therefore, the Court holds that relief from judgment is not warranted on grounds of excusable neglect.

C. **Any Other Reason Justifying Relief**

Although Wagley argues that "manifest injustice" is grounds to grant reconsideration under Rule 59(e), he cites out-of-circuit authority for this proposition. [Record Document 90-3 at 4 (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999))]. As noted above, the Fifth Circuit recognizes only factual or legal errors or newly discovered evidence as grounds for a Rule 59(e) motion. *Templet*, 367 F.3d at 479 (quoting *Waltman*, 875 F.2d at 473). However, Rule 60(b)(6) authorizes relief from judgment for "any other reason justifying relief." Fed. R. Civ. P. 60(b)(6). The Fifth Circuit has explained:

> Section (b)(6)'s "any other reason" language refers to any reason other than those contained in the five enumerated grounds on which a court may grant a Rule 60(b) motion. Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses. Relief under this section is granted only if extraordinary circumstances are present.

*Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 773–74 (5th Cir. 1995) (internal citations and quotation marks omitted).

A within-guidelines sentence is presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 347 (2007). Because the Sentencing Guidelines authorize five to eleven months imprisonment and up to a year of supervised release, Wagley bears the burden of demonstrating that a six-month sentence followed by a year of supervised release is unreasonable. His argument

14

boils down to the following: he is an addict who was otherwise compliant with the terms of his probation. [Record Document 90-3 at 7]. Wagley has cited no authority for the proposition that compliance with some of the conditions of probation excuses a failure to comply with other conditions. In any event, Wagley's premise is factually incorrect because—unrelated to his drug use—Wagley also failed to pay some of the installments of his fine despite having the ability to do so.[7]

When revoking probation, a court must consider those of the 18 U.S.C. § 3553(a) factors that are applicable. 18 U.S.C. § 3565(a) (2012). Relevant here are the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> . . . .
>     (B) . . . the applicable guidelines or policy statements issued by the Sentencing Commission . . . .

*Id.* § 3553(a). Although the Guidelines authorized a sentence between five and eleven months, the Court selected a sentence of six months—roughly the midpoint of the two-to-eight-month

---

[7] The testimony at Wagley's first revocation hearing established that he paid the fine prior to the hearing by liquidating an asset that he owned before he fell into arrears. [Record Document 84 at 29–31]. As Judge Doherty noted at that time, although he had to liquidate the asset at a loss in order to pay the fine, this fact in itself does not excuse his failure to timely comply with his obligations. [*Id.* at 31].

range the Guidelines prescribe for his offense of conviction. [Record Document 92 at 63]. Given that Wagley had repeatedly failed to comply with the same condition of his probation, the Court had limited options short of incarceration. As the Court explained at the hearing:

> The Court is deeply concerned by the defendant's apparent lack of concern for the seriousness of his conduct and the lack of appreciation for the opportunities multiple judges of this court had extended to him in declining to impose sentences of incarceration. One of the purposes that Congress has identified in criminal sentencing is promoting respect for the law. It is clear to this Court that a sentence of probation following the defendant's felony offense has not achieved that objective as the defendant has continued to engage in unlawful behavior.
> Furthermore, the Court notes that the defendant, even today before the Court, could not accept full responsibility for his own actions. He sat on the witness stand and blamed the probation office for his relapse for only providing him treatment once a week.
> The Court has also considered the heartfelt arguments of Mr. Schiff and Attorney Wagley, the defendant's brother, and Dr. Lejeune's very sympathetic testimony about the defendant and how this defendant needs to get his life straight and his optimism that further treatment would assist him, but this Court can only conclude that although the defendant's marijuana use may not be a danger to the community, his lack of respect for the rule of law is.
> Mr. Wagley, you do your case no good by making faces at the Court.

[*Id.* at 62–63]. Wagley's motion reveals no extraordinary circumstances that justify deviating from this Court's original sentence.

### IV. Conclusion

Wagley may be addicted to marijuana. But he has always had the resources to obtain as much recovery support as he may need; his repeated self-funded participation in inpatient and intensive-outpatient rehab testifies to this fact. Nothing prevented him from seeking out additional assistance with his recovery in order to comply with this Court's orders. Rather than do so, Wagley elected not only to continue using marijuana, but also to lie about it. He was

16

consciously aware that he was violating the conditions of his probation. He knew that he should not be using marijuana, but rather than take steps to stop, he made a different choice. The Court is not asserting that Wagley can simply exercise will power and abstain without assistance. But a probationer is culpable for failing to take affirmative steps to resolve issues that prevent compliance with the conditions of his probation.

Wagley's motion for reconsideration and for a new trial [Record Document 90] is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this the 23rd day of __October__, 2018.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE